All right, the court is Thank you for taking what I think is a fascinating case for oral argument. I would like to kind of start with the reply brief and go backwards because I think that's where plaintiff and defendant were really the agreements came to head or the disagreement came to a head about interpreting a physician client privilege. And that was the plaintiff said we've got all these cases that are DUI cases and they all say that exception applies to the physician patient privilege. Your health is at issue when you're a party to a DUI. Why doesn't that apply in the civil cases? And the plaintiff's position, at least as I understand it, is that the first district case of Prima v. Austis is wrong as well as the second district case of Pritchett v. Swedish American Hospital and probably also the second district case of House v. Swedish American Hospital. But I think it's a much easier question than that because there had to be a reason that the DUI cases, the criminal cases, are different than the civil cases. And I think I realized it when I was reading the People v. Botsis case and counsel pointed out that People v. Botsis appears to disagree with the Cramer opinion. And I discovered that Judge Wilson was on the panel concurred in Cramer and that he was the author of the People v. Botsis decision. And in fact, in People v. Botsis, he cited Cramer in support of his opinion. So either Judge Wilson has taken leave of his senses and has no idea what the case he is citing stands for or else there is a reasonable explanation why a criminal case is different than a civil case with respect to waiving the physician-patient privilege. Let me just stop you for a second. Sure. Were we talking about Interrogatories 21 and 22? Yes, Your Honor. Where do they ask for any information protected by HIPAA? Well, you know what, that is an interesting question. Thank you. Because, well, it wasn't brought up by plaintiffs, but I would love to address it because the scope of discovery allows you to discover anything that will be relevant and admissible or may lead to relevant and admissible evidence. And our position is if you want my medical records, it certainly may lead to relevant information, but if there is a privilege, it will never lead to admissible information and therefore our privilege stands and we say, look, we don't have to tell you what we treat for or who we treat with. Well, but that wasn't your objection. Your objection was it seeks privileged information, right? And so that was your specific objection in the trial. Well, it was the specific objection to the interrogatory, but I think when the matter was briefed, we cited CREMA and said, look, we have to put our health at issue, our physical condition at issue, before we even get to go down this path. Because until we do, the path ends in inadmissible information, so it will not lead to anything that's admissible in the trial court. Well, do you think that by requiring a doctor's, you disclosed that he had to have a doctor's note letter to drive? Correct. Doesn't that reasonably suggest that there's something medical going on and we ought to see what this condition is and whether he's complying with his doctor's orders or whatever? Well, interestingly enough, my response to that is twofold. Number one, CREMA deals with that issue, although it wasn't discussed in the brief. The CREMA decision, the doctor testified in his deposition, he said, my arthritis was getting bad, I had to give up surgery. And the reasonable question, judge, is yours. Shouldn't we be allowed to dig around in that a little and see if that arthritis was affecting you back when you were doing surgery? And the appellate court said, no, it's not relevant, it's not material, the privilege stands. He also filed, and I'll get more specific, the doctor, the defendant in CREMA also filed a disability claim, and the court said even though in another action he filed a disability claim, it still doesn't waive the privilege. In our case, and I did cite this provision, the Illinois Vehicle Code, 625 ILCS 5-6-908, says all the stuff for driving privileges, completely privileged. There's not even an exception in the Motor Vehicle Code for the physical exams, for the letters, for any of that information. So I would suggest that the legislature, well knowing that they passed the physician-patient privilege here, and having in the Motor Vehicle Code a system whereby a person can say, my doctor says I'm okay to drive, that the legislature can tell us when you do that, you don't open up the door to all of your physical condition and your physicians and your information being at issue. And I think the reason, if you'll bear with me, this makes sense, is there's really nowhere to stop under the plaintiff's proposal. The plaintiff's proposal is really that I can make your physical condition at issue. I can do it by filing a lawsuit and saying you drove negligently. So therefore, could you see, could you hear the horn, are you strong enough to apply the brakes? All of those things, as you point out, would be great to dig into, but the courts have time and time again said that we have a privilege for a purpose and that bulwark won't be breached just because it may bar relevant or material information. So again and again, courts have said yes, the whole point of a privilege is that it does bar information that could be relevant and material, but the privilege we hold in greater stead than the plaintiffs need to dig around. Well, but I guess where I'm going is that isn't the objection then, since these interrogatories on their face don't appear to ask for privilege, you know, the name of your doctor, who your doctor is, if you went and saw him, it doesn't seem to be privileged under HIPAA. But, you know, your treatment diagnosis when you said all that kind of stuff is. So isn't the objection to these interrogatories maybe overly broad, not counting maybe the lead to relevant and admissible material, as opposed to it seeks privileged material? You know, perhaps. I would say that I'm going one step further and I'm saying when I give your, I mean, we all know that the interrogatories are the jumping off place, discovery is broad. I would say to your honor, what on earth is the next step once we list our doctors? We know that plaintiff's attorney can't call them and say, what's up? We only know they can issue a subpoena and ask for the records. And we know that because of the case law, which is very clear, the plaintiff's not entitled to those records. Well, and then it seems, you know, I'm an old defense lawyer, and it seems to me then that the plaintiff's attorney doesn't file, they can't file that subpoena to the docs or the hospital. So I'd say that you know this, and you file that subpoena. Well, I would suppose that should your honor send us back and say disclose that information, and then they issue the subpoena, at least I've done the briefs for the next time we get here, because that is the only step down the road. So I guess while I could say that maybe if I had said it was overly broad, and the judge would have overruled overly broad and said answer it, then we'd be up here and I'd say the reason it's overly broad is because it deals with an issue that's not in this case, and that's the defendant's health. And there's four cases in the briefs, your honors, that deal with, or five, that deal with the issue of physician-patient privilege in a civil action, and that's Pritchard, House, Cramer, and then, yeah, oh, Burns v. Gazzetta, I'm sorry, I miscounted five cases. Doe v. Winesweep said here's how the defendant in Doe made his health an issue. He filed a motion with an affidavit and a medical record saying I didn't give the plaintiff, where slang jumps to my tongue, but I'm going to search for a communicable disease. But the plaintiff, the defendant filed that motion and said here I can prove my health in this case. In Burns, that was an interesting case, your honor, you said there would be an interesting law school question in the last argument. Burns v. Gazzetta would be a perfectly good torts case. Burns is in an accident with a driver who dies. Gazzetta is his administrator of his estate and files an affirmative defense and says he had an aneurysm, an unforeseen medical consequence, and crashed, and therefore we're not liable. And the trial court actually bought it and said, okay, I believe it. And Burns' appellate court said, no, you can go back and have a trial on this issue. But the court was very clear that the affirmative defense of sunnied and unexpected illness was what bought the defendant driver or the defendant's decedent's driver, what brought that into an actual issue. And then when you've got the criminal charges, Justice Wilson and Justice Leighton, I think, was the third district judge in Kaiser, or People v. Krause, that said when we look at the DOI statute, what the person is charged with is driving under a certain physical condition, in that case being drunk or being on drugs. And I get your point, but what do we make out of the fact that these are in the Supreme Court's standard aneurysm? A couple of things. First of all, and I think I cited that in my brief, Supreme Court Rule 215, the committee comments actually say mere allegations don't put a plaintiff's or defendant's physical condition at issue. But number two, I'm fascinated by what I find on my way to look up something else. And I found in the appendix to the Supreme Court rules that says a party, and the committee comments say a party may combine form interrogatories with other interrogatories subject to applicable limitations. A party shall avoid propounding a form interrogatory which has no application to the case. And I would say that unless there is a pleading where the defendant says, I got a case of the vapors, that's why I couldn't suddenly was blind, my diabetes, which was what caused him to need the letter, if he said my diabetes caused me to give this accident, then fair enough. The plaintiff gets everything he wants, and the plaintiff gets to propound a form interrogatory which has application to the case. So the Supreme Court rules in and of themselves say not all of these are going to be applicable. And, you know, it's a funny thing anyway. We notice it for the first time when we're here before your honors, because the question comes up, why hasn't this come up before? And my answer to you would be, I have no idea. I've been objecting to these interrogatories for 20-odd years, and the circumstances are finally right to bring this before the appellate court and answer exactly that question. We've got these form interrogatories the Supreme Court says are lovely, but they don't say they're lovely in every case. I would be tempted to quote Judge Heiple on the Supreme Court versus augury. Justice Wright is telling me I better not do that. But, you know, what they may say about their form interrogatories or the intent of the committee, I don't know. But I do know that the committee comments say not all of these are going to be applicable in every case. And attorneys, you know, you give us something, we put it in a computer, a file comes in, we hit print, and send them on off. And we've been doing that for years, but it doesn't mean the questions overcome the privilege. And I think in my brief I have an entire section on that. There are cases where a plaintiff has said, hey, the Supreme Court rules are broad. 201 allows us to make you, defendant, cough up any documents you have that might be relevant or material. And the Supreme Court in the Code of Civil Procedure, Section 408, 804, said discovery is this broad, broad, broad scope. And the court in that case, and I'm drawing a blank what section of our original brief it was, but we dealt with the fact that just because the Supreme Court rules say discovery is broad, just because they say we can ask doesn't mean that the privilege goes by the wayside. So if there's no other questions. Thank you very much. Any other questions? Counsel? How do you pronounce your name? Sophin? That's right. All right. Mr. Sophin. May I please report, counsel? Counsel wanted to start at the end. I'm going to start at the beginning. Maybe we'll meet in the middle. You're right. Start wherever you want. Let's look back at what the trial court heard when it made this decision, because it's important to remember there's going to be two issues here. The first is that the trial court abused its discretion in deciding that the defendant's vision was a relevant consideration before we even get to the de novo issue about the privilege. And what the trial court heard was that the defendant had, in Marshall County, a dozen traffic citations over the last 20 years, eight or nine different collisions. He admitted in his interrogatories that he requires a medical note in order to get his driver's license, that he had lost his ability to drive at least one time. And then the specific instance that occurred here, which was that Scarlett Palm was walking across the street in daytime, in broad daylight, in Lake and Illinois, and the defendant drove into her. Okay, but he didn't drive. She wasn't on a sidewalk or in her front yard when he drove into her. She was in the middle of the road, right? In the crosswalk, walking across the street, yes. At a crosswalk. Yes. So the trial court, and I'll quote here just to make it clear, the trial court said that any visual impediment is an issue, that the answer is intimated that the defendant has a driving restriction, that there's some concerns about his vision because of diabetes, that there's an allegation that he didn't see her, and that raises the issue of whether or not sight is a question here. I don't, I mean, is anyone questioning that privileged information is relevant? I don't know. There was a discussion in the reply brief about, well, what does relevant mean versus what does unissued mean? So I'm not sure. I don't think there can be any question about it being relevant given that it's an auto accident. Isn't that what privilege is all about? Nobody cares about blocking irrelevant evidence. Isn't that what privileges do is prevent you from getting your hands on relevant information? Sure. Sometimes they do, but in this case they don't because of the language of the statute. I know we've been talking about law school questions. Nobody's going to ask this one because if you saw this question, is the patient privilege exception four, is that ambiguous? I'd love to see that question because the answer is, of course, it's not ambiguous. It says if this is an issue in the litigation, the privilege doesn't exist. It doesn't say that he makes it an issue and the privilege doesn't exist. But the statute doesn't say that. The statute doesn't say that anywhere. That came out of the Pritchard case about that they have to put it into evidence first. That's the only place that that exists. The statute does not say that. Well, what about this? Okay, so you sue somebody and you say, gee, they're negligent. They crashed into me and did what they shouldn't have done or didn't do what they should have done and they just weren't driving right, and so there might have been they didn't see me or they didn't stop at the red lights or see the whatever. Give me an example of a case where you couldn't, under this theory, where you couldn't just by suing somebody in a traffic offense case get their medical records. Well, I think you can get their vision records in any case, in any automobile case, because it's a negligence case. They have a duty to drive. They have a duty to watch for others on the road. And if they answer that and say, yes, I receive eye care or if I require lenses to wear myself and they wanted to know what my prescription was, I think that's relevant. That's an issue because there's a negligence allegation that I breached my duty to drive by not being able to see. That would be an issue. Now, the opposite. But you say that we didn't see it. But the defendant didn't say, well, I couldn't see, and that's why I ran in. But it seems to me that we do kind of protect people. You know, the idea of and, for example, somebody out, especially you're from my area, and, you know, smaller areas like that, maybe somebody knows somebody's got something rather embarrassing in their medical records. I know how to settle this case. Ask for their medical records because I know they don't want this disclosed. They don't need to see it. They don't need to see it. You know, couldn't have. And if you say, and by the way, you're not just asking for vision records, right? You're saying, gee, I'm a person. I mean, these aren't that narrow, right? The federal interrogatories are not narrow. No, they're certainly not. But in this case, the relevant issue is the vision. Or if he said, oh, I saw an orthopedist because I had a, you know, broken arm five years ago, well, that's not relevant to what happened here. So the legitimate issue is going to be relevance. And so why does he even have to tell you he went to the orthopedist five years ago? Well, because that's, he's going to have to disclose anything that could lead to relevant evidence. If it led to relevant. Relevant and admissible evidence. Correct. If it led to protected by a privilege, it's not admissible. Well, it's protected by about the thinnest privilege we could possibly have. It's not a constitutional privilege. It's not a common law privilege. It's a statutory privilege. It's a statutory privilege that restricts my client's common law rights to seek the truth. And I think we've seen in, and to go back to your question about these cases, let's talk about the opposite of that. Let's say that my client was hit and killed by a drunk driver and she wanted blood results. Couldn't you say, no, I have a physician-patient privilege for my blood test results. You can't get those. Because that's the same argument, except in the extreme. Well, that's my medical history. That change to the privilege was made back in the late 80s as a statutory exception to this privilege. So that was something that was a matter of public policy that the General Assembly said, this is a circumstance where we are going to find that the patient privilege doesn't attach in this circumstance. Had they wanted to do that in every case, they could have, but they didn't. They said they're limited to those cases where you're charged with operating a vehicle under the influence of alcohol or drugs and you're involved in an accident causing injury and death. They didn't say any time there's a vehicle accident where someone's, you know, alcohol or physical condition, because they don't even say that in these other cases. They don't say you shouldn't be driving because you're blind. They said alcohol and drugs. That's what it's going to be limited to. I disagree. Because if you read Exception 4, it says in any litigation in which a physical or mental condition is an issue. That's all it says. And I agree that's what it says, but I'm saying if we look at that on its face, then I can't conjure up any motor vehicle accident where you couldn't, where a reasonably competent plaintiff's attorney couldn't argue that, well, gee, the defendant wasn't driving the way I said he ought to have been, and therefore his medical condition is an issue. Then it's going to be a real short affirmative opinion, Your Honor. And by the way, in this case, if somebody runs into a woman at a crosswalk, one in a row, 22, name and address of any physician or other health care professional who examined and recruited you within the last 10 years and the reason for such examination and recruitment. If you went to the doctor 10 years ago, what's that going to do to this accident? It depends. It depends on if it's relevant and if the trial court abused its discretion in determining if that was relevant. If there was an objection to, well, this is overly broad, you need to say this type of doctor or this type of doctor or this type of doctor. As Your Honor knows from practicing defense work, these are the standard interrogatories that get thrown out in every case. And a lot of the times plaintiffs will answer them or defendants and say, well, I'm going to object because these are overly broad, but here are these three or four physicians that are going to be relevant to this because we're not going to get into a big fight over going to the judge and saying, like in this case. No one can dispute that this was a relevant issue, especially when he admits, yeah, I have a restriction on my license and I've lost it at least once. No one's going to be able to say that's not relevant. So in order to do what you're suggesting, you would have to say the trial court abused its discretion by saying that the vision was relevant because the statute turns on relevance. It's is this an issue? That means relevance. So unless the trial court abused its discretion, you should have said, no, your vision isn't an issue. You're leaving out a word, relevant and admissible. And I guess at the bottom line of the argument is, well, that's a battle for another day after we find whether we can get these particular records. There seems to be an indication in the record that you already have all these records. These records already been obtained. Is that right or wrong? No, we know some of the things from just the Was there a, did the defendant sign, you know, these trial judges now are having defendants. If people, certainly plaintiffs, sign these HIPAA order, HIPAA releases, you know. Yeah, I think there was a standard HIPAA release. I didn't handle the trial litigation, Your Honor, but I know our firm's standard HIPAA release is basically the generic, well, we're going to keep these confidential. It's not, we're going to be able to run up and get everything over your, you know, objection. I think it was just, we're going to keep these in confidence. When the case is over, we'll destroy them and pursue them and so forth. So I don't think that was ever an issue. Okay. But the one thing I haven't mentioned is the genesis of all of this litigation is from apparently one section, one sentence in Petrillo about, well, the legislature intended that when a plaintiff files a suit, they waive their ability to claim privilege over these things. And that's true, that's what Petrillo stands for as far as a plaintiff is concerned. It never discussed what happens in a situation which a defendant's medical condition is relevant. And that's what Pritchard then drew on that to say, well, this must apply in a case of a defendant. But Petrillo doesn't say that anywhere. And, in fact, what Petrillo says is that Exception 4 is a, quote, good balance between public policy of protecting mental health and physical health records versus our need to know the truth in civil litigation. So I don't think you can read Petrillo to say, on the one hand, it means a defendant can hide anything unless they bring it in. But at the same time, we need to say, well, but Exception 4, that says it's coming in if it's relevant, is meaningless now. And, again, what we're dealing with here is a statutory privilege that is going to constrain common law rights. And as the Court is well aware, when we're constraining common law rights in a statute, that's got to be narrowly construed. Those exceptions, because that is the common law, have to be construed as favorably as possible to my client. And in looking at the statute and taking those statutory construction principles in mind, there's no way to read that to say anything other than an issue must mean if it's relevant, that we leave it up to the trial judge to determine what is and is not relevant. We could have had a hearing over, well, this is an orthopedic doctor, this is this type of doctor, and that's why we have trial courts, that the trial courts can weigh through these evidentiary issues and decide. And in this case, the trial court heard the evidence and decided, yeah, this is going to be an issue in this litigation because your ability to drive is an issue. And therefore, this has to be a relevant consideration. You've said you require this doctor's permission. You've said that you've lost it on at least one occasion. They're permitted to look into it because that's going to be an issue in proving negligence. Any other questions? Thank you. Thank you. Mr. Kempton, some rebuttals? Very briefly. I did find the case I was referring to, House v. Swedish American, was the case where the plaintiff, relying on 8-402 of the Code of Civil Procedure, that says courts have the power to require parties to produce documents which contain pertinent evidence. And also 201, a party may obtain full disclosure relevant to any claim or defense. And I guess I would, in House, they said that doesn't overcome the privilege. And I would say it doesn't in this case either. But Rule 201, again, the language is a party may obtain full disclosure relevant to any claim or defense. We haven't made our health a defense in this case. And as you pointed out, Your Honor, there's no way to stop that train. If you say by filing a lawsuit the defendant's health is an issue, it will always be an issue. You will always be able to dig it up. And that's true. But also, I mean, it seems in this case, you know, the counsel's argument has some appeal to the extent that he's saying, well, this isn't your run-of-the-mill car crash. We've got a fellow who is, in addition to having all these accidents, although I don't know if that necessarily shows a health problem, but certainly not much of a driver. But the fact is, Your Honor, you've got a doctor who says you couldn't drive under certain circumstances. Gee, I mean, they'd be entitled, oh, let's say he's got Dr. B who said, look, pal, you should not be driving at any time. I'm telling you now. So he says, well, gee, I'm going to go to Dr. C. And Dr. B, I'm going to keep going to a doctor until I find one. And, of course, Cain, who will give you a letter that says you can drive. And he's complaining that you've been entitled to know that. And he says, you've got these docs saying you are a danger to drive. I'm telling you now, don't do it. That is why all of the cases don't say that the privilege hinges on relevance. That's my disagreement with counsel. He says relevance controls the privilege. And the case law is very clear. The privilege controls relevance. And it's a public policy issue where they have said we're going to keep this private unless the defendant puts it at issue. And the Supreme Court rules reflect that. I did want to make one comment since counsel brought it up. He said this privilege infringes on our common law right and, therefore, should be narrowly construed. That argument is sophistry at best. The Illinois Supreme Court said, as a matter of fact, and cited in the D.C. versus S.A. case that no one has a constitutional right to a rule of evidence. And cited another Supreme Court case all the way back in, I think, 1923. So, well, under the cases he cited for these derogation of common law must be strictly construed were all property cases. And I laid that out very clearly. But this privilege is simply a rule of evidence. He doesn't have a right one way or another. The court or the legislature in passing the physician-patient privilege wasn't passing that privilege to impinge on his common law right to willy-nilly get anyone's medical records that he wanted. I don't think you can read it like that. And I think the Supreme Court dealt with that in the D.C. versus S.A. And I don't have anything else unless there's any more questions that arose. Thank you very much, Your Honor. We'll take this matter under advisement. This position will be issued. We'll be in a brief recess for a panel of cases.